Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUSAN J. STROMBERG, on behalf of herself and those similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC, and MIDLAND CREDIT MANAGEMENT, INC.,<br><br>        Defendants. | Civil Action No. 16-9288 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

       Plaintiff Susan J. Stromberg filed this putative class action against Defendants Midland Funding, LLC, and Midland Credit Management, Inc. (collectively, "Midland") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. (D.E. No. 74 ("Second Amended Complaint" or "SAC")). Before the Court is Ms. Stromberg's motion for class certification. (D.E. No. 154 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the motion for class certification is **DENIED**.

**I.    BACKGROUND**

    **A.    Factual Background**[1]

       Ms. Stromberg was an account holder at Capital One Bank ("Capital One") who incurred debt in connection with personal, family, and household transactions. (SAC ¶¶ 20–21). Ms.

---

[1] The factual background is based on the allegations set out in the Second Amended Complaint. While the Court summarizes the Second Amended Complaint to provide factual background, it does not accept the allegations as true.

1

Stromberg made payments on the account through February 2010. (*Id.* ¶ 24). In March 2010, however, she defaulted on the debt. (*Id.* ¶¶ 22, 25–26). Thereafter, Midland purchased Ms. Stromberg's account among a pool of defaulted consumer debt and attempted to collect the defaulted debt on her account. (*Id.* ¶¶ 23, 28–29). Specifically, Midland sent Ms. Stromberg a collection letter on December 16, 2015, which included settlement offers and "pre-approved" discounts and savings. (*Id.* ¶¶ 29–30, 32, 36–40).

According to Ms. Stromberg, Midland's collection attempt occurred after expiration of Virginia's statutes of limitations for contract claims, which applied under Capital One's terms. (*Id.* ¶ 27, 33–35). Despite this restriction, the collection letter did not disclose any relevant dates, let alone that the debt was time-barred or that settlement or payment could restart the statute of limitations. (*Id.* ¶¶ 48–51, 54–55). Instead, the collection letter was a boilerplate form with allegedly false language that implied that the account was enforceable. (*Id.* ¶¶ 31, 52, 56–57). As a result, Ms. Stromberg believed that Midland would sue to collect the debt. (*Id.* ¶ 53).

Ms. Stromberg alleges that Midland regularly attempted to collect time-barred debts in this manner in violation of the FDCPA. (*Id.* ¶¶ 41, 58–61). Thus, Ms. Stromberg filed this action on behalf of herself and a putative class for alleged violations of the FDCPA. (*Id.* ¶¶ 61–62, 75–82). Ms. Stromberg seeks to recover statutory damages, actual damages, attorney's fees, and interest on behalf of herself and those similarly situated. (*Id.* ¶ 64; *id.* at 12–13).

**B.** **Procedural Background**

On December 15, 2016, Ms. Stromberg filed this suit against Midland (D.E. No. 1), and on April 9, 2019, she filed the Second Amended Complaint (SAC). Ms. Stromberg filed the present motion for class certification on October 13, 2021. (*See* D.E. No. 154-1 ("Mov. Br.")). On December 13, 2021, Midland filed an opposition (D.E. No. 158 ("Opp.")), and on December

31, 2021, Ms. Stromberg filed a reply (D.E. No. 160 ("Reply")). Midland filed a sur-reply on January 18, 2022. (D.E. No. 163 ("Sur-Reply")).

### C. Proposed Class

In the Second Amended Complaint, Ms. Stromberg proposed a class with reference to "debt [that] was barred by the applicable statute of limitations on the date of the letter." (SAC ¶ 63). In the instant motion, however, Ms. Stromberg proposed the following class:

> All natural persons to whom Midland Funding LLP or Midland Credit Management, Inc. mailed a Letter to a New Jersey address in an attempt to collect on an Account where:
>
> "Letter" means a writing dated December 16, 2015, December 31, 2015, or January 6, 2016 and that date is at least 915 days after the Account's "Charge Off Date" as shown in Defendants' records; and
>
> "Account" means a credit card account issued by Capital One Bank (USA), N.A. who assigned the account a number beginning with 517805.

(Mov. Br. at 4). The Court will consider the revised class proposal. *See Kalow & Springut, LLP v. Commence Corp.*, 272 F.R.D. 397, 401–02 (D.N.J. 2011) (citing *Weisfeld v. Sun Chem. Corp.*, 84 Fed. Appx. 257, 259 (3d Cir.2004)) ("Plaintiff is not bound by the class definitions proposed in its Amended Complaint, and the Court can consider Plaintiff's revised definitions, albeit those revisions are made in its motion for class certification.").

## II. LEGAL STANDARDS

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted). Thus, a party moving for class certification "bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citing *Comcast*,

3

569 U.S. at 33). In particular, "every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)–(b)). Here, class certification is sought pursuant to Rule 23(a) and Rule 23(b)(3).

Under Rule 23(a), any party who seeks class certification must meet four requirements. First, the party must prove that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Second, the party must establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Third, the party must prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Fourth, the party must establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). These requirements are respectively referred to as the numerosity, commonality, typicality, and adequacy requirements. *See, e.g.*, *Marcus*, 687 F.3d at 590–91.

A party who seeks class certification under Rule 23(b)(3) must meet additional requirements. As a threshold condition, the party must prove "that the class is ascertainable." *Byrd*, 784 F.3d at 163. In addition, the party must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are respectively referred to as the ascertainability, predominance, and superiority requirements. *See, e.g.*, *Kelly v. RealPage Inc.*, 47 F.4th 202, 205 (3d Cir. 2022).

As with any suit, a class action can only be litigated by a party with standing. *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 332 (D.N.J. 2014). Under Article III of the United States Constitution, standing consists of three requirements:

> 1) 'the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which was (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; 2) 'there must be a causal connection between the injury and the conduct complained of'; and 3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'

*Twp. of Lyndhurst, N.J. v. Priceline.com Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).

### III.  DISCUSSION

Ms. Stromberg and Midland dispute whether the standing requirements of Article III and the ascertainability requirement of Rule 23(b)(3) are satisfied. The Court considers each requirement in turn, as well as the predominance requirement of Rule 23(b)(3).[2]

#### A.  Standing

To establish Article III standing to sue, a plaintiff must demonstrate (i) an "injury in fact"; (ii) a "causal connection between the injury and the conduct complained of"; and (iii) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May

---

[2] The parties do not appear to dispute the other requirements of Rule 23(a) or Rule 23(b)(3). Midland has raised a potential issue with the adequacy requirement by filing a notice of supplemental authority and directing the Court to *Dixon v. Jefferson Capital Systems, LLC* for the proposition that Ms. Stromberg and class counsel are inadequate. (D.E. No. 159). However, adequacy is not amenable to supplemental authority because it was not contested in opposition to the motion for class certification. In any event, the Court finds *Dixon* unpersuasive. That case is a nonbinding out-of-circuit decision where class counsel was found inadequate based on a retainer agreement. *See Dixon v. Jefferson Capital Sys., LLC*, No. 19-02457, 2021 WL 5908431 (S.D. Ind. Dec. 14, 2021). In this case, no retainer agreement has been produced, and class counsel has indicated that it intends to revise the retainer agreement. (*See* D.E. No. 160-1, Kim Decl. ¶¶ 5–10).

24, 2016).

Here, Midland argues that the putative class lacks standing because Ms. Stromberg has not demonstrated that each member suffered harm beyond the asserted FDCPA violations. (Opp. at 11–18). Ms. Stromberg argues that she suffered harm because she filed for bankruptcy, and that the other putative class members suffered potential injuries as well. (Reply at 14–19).

The Court finds that the parties' dispute is more appropriately discussed as part of the predominance analysis. The Supreme Court has not "address[ed] the distinct question [of] whether every class member must demonstrate standing *before* a court certifies a class." *TransUnion*, 141 S. Ct. at 2208 n.4. But the Third Circuit has addressed this distinct question, and held that "unnamed, putative class members need not establish Article III standing." *Neale*, 794 F.3d at 362. In other words, "it is not necessary for each member to prove his or her standing for the class action to be justiciable." *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 155 (3d Cir. 2023) (citing *TransUnion*, 141 S. Ct. at 2208 n.4). Rather, "the potential inclusion of some members without standing in a class can result in 'legitimate Rule 23 challenges.'" *Id.* (quoting *Neale*, 794 F.3d at 367–68). Therefore, individualized issues with respect to standing will be treated as a predominance challenge under Rule 23. (*See infra* at 12).[3]

### B. Ascertainability

Under Rule 23(b)(3), the movant must show "that the class is ascertainable." *Byrd*, 784 F.3d at 163. For purposes of ascertainability, "the class must be defined with reference to objective criteria," and "there must be a reliable and administratively feasible mechanism for determining

---

[3] Midland does not appear to challenge standing at this stage as to Ms. Stromberg insofar as she is the named Plaintiff. Rather, Midland contends that "[t]o the extent [Ms. Stromberg] attempts to argue that she was somehow confused or distressed after reading the letter at issue, such an argument would miss the mark because it is now clear . . . that even assuming a named Plaintiff has suffered some harm, it must be established that each of the putative class members also suffered the same harm." (Opp. at 18 n.6). Such a challenge plainly concerns predominance, rather than Ms. Stromberg's own standing to sue.

whether putative class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013).

Here, Midland argues that the class is not ascertainable because the applicable statute of limitations, the default date, and the possibility of tolling entail individualized inquiry for each putative class member, and other courts have denied class certification under similar circumstances. (Opp. at 18–34). Ms. Stromberg argues that the possibility of tolling is speculative, that the default dates and the applicable statutes of limitation can be determined on a class-wide basis, and that issues in determining the applicable statutes of limitation are attributable to discovery misconduct. (Reply at 2–12).

The Court again finds that the parties' dispute on the topic of ascertainability is more appropriately discussed as part of the predominance analysis. Although individualized inquiries may be necessary to determine whether putative class members' debts are time-barred, that problem is not a challenge to ascertainability. For ascertainability, the relevant concern is the class definition, which no longer references time-barred debts. Indeed, the class definition now references a seemingly objective criterion—"the date [of the Letter] is at least 915 days after the Account's 'Charge Off Date' as shown in Defendants' records." (Mov. Br. at 9). Therefore, the Court does not see any substantive ascertainability issue, and individualized issues with respect to the statute of limitations will be treated as a predominance challenge. (*See infra* at 8–12).[4]

### C. Predominance

Under Rule 23(b)(3), the movant must show that "questions of law or fact common to class

---

[4] Individualized issues aside, the ascertainability requirement is likely satisfied. The evidence suggests that evaluation of membership in this putative class is administratively feasible, as Midland already conducted a search and produced data sampling with largely overlapping conditions. (*See* D.E. No. 148; D.E. No. 154-2, Stern Decl. ¶ 47; D.E. No. 157, Beh Decl. ¶ 10). Midland insists that the "data sampling does not in any way equate to identification of potential class members" and that the "proposed class should not be certified because there is no way to determine membership without individualized inquiry." (Opp. at 9–10). However, this critique assumes the proposed class from

7

members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008), *as amended* (Jan. 16, 2009) (citations omitted). Rule 23(b)(3) states that

> [t]he matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The Third Circuit has held that "the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts." *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32–33 (3d Cir. 2011). Additionally, debt collection "letters, when read in their entirety, must not deceive or mislead the least-sophisticated debtor into believing that she has a legal obligation to pay the time-barred debt." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 430 (3d Cir. 2018). To evaluate whether a debt collection has threatened legal action or misrepresented a legal

---

the Amended Complaint, which references time-barred debts, not the revised class proposal in the instant motion, which references other, objective conditions. (*Id.* at 6–7).

obligation with respect to a time-barred debt, the Court must, of course, determine whether the debt in question is time-barred. The Court finds that ultimately, individual issues predominate over this determination, as well as determinations of standing, barring class certification in this matter.

      i.    **Statute of Limitations**

Individual issues predominate with respect to the statute of limitations. As an initial matter, Ms. Stromberg provides no evidence that individual class members would all have sued Midland in the same forum, so it is unclear that the same choice-of-law rules would govern across the class. *See, e.g.*, *Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., L.L.C.*, 160 A.3d 44, 64 (N.J. Super. Ct. App. Div. 2017) ("When New Jersey is the forum state, its choice-of-law rules control."). But even if New Jersey choice-of-law rules would have governed in each case, it is still unclear that the same statute of limitations would have applied to all of the putative class members.

New Jersey courts uphold contractual choices of substantive law, with two exceptions: if "the chosen state has no substantial relationship to the parties or the transaction" or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992) (citations omitted); *see also Midland Funding LLC v. Jimenez*, No. PAS-5600-14, 2014 N.J. Super. Unpub. LEXIS 3114, at *7–8 (N.J. Super. Ct. Nov. 19, 2014). "It is well-settled in New Jersey that the statute of limitations is a matter of substantive law, not procedural law." *Midland*, 2014 N.J. Super. Unpub. LEXIS 3114, at *8. Absent a contractual choice of law, "New Jersey, as the forum state, presumptively applies its own statute of limitations." *McCarrell v. Hoffmann-La Roche, Inc.*, 153 A.3d 207, 223–24 (N.J. 2017) (citing Restatement (Second) of

Conflict of Laws § 142 (1971)).[5]

Here, it is unclear from the evidence before the Court to what agreements the putative class members are or could be a party, and what the terms of those agreements are.[6] There is essentially no evidence that a uniform contractual choice of law provision applied across the class. To the contrary, the agreements that Capital One was required to post on its website do not seem to reflect all of the historical terms that governed cardholders (*see* D.E. No. 154-2, Stern Decl. ¶¶ 30–32), which may have included yet other choice-of-law provisions.[7] It seems quite clear that determining those terms would require an individualized inquiry into each potential class member.

Further, even accepting Ms. Stromberg's argument that "all Capital One credit card

---

[5] In *McCarrell*, the court recognized § 142 of the Second Restatement as "the operative choice-of-law rule for resolving statute-of-limitations conflicts" to yield "more predictable and uniform results that are consistent with the just expectations of the parties." *McCarrell*, 153 A.3d at 210. "While the court in *McCarrell* applied § 142 in tort actions, the Appellate Division has expanded the application of § 142 to contractual disputes as well." *Yerkes v. Weiss*, No. 17-2493, 2018 WL 1558146, at *5 (D.N.J. Mar. 29, 2018) (citing *Berkley Risk Sols., LLC v. Indus. Re-Int'l, Inc.*, No. L-2366-15T1, 2017 WL 4159170, at *7 (N.J. Super. Ct. App. Div. Sept. 20, 2017)); *see also Pazymino v. Portfolio Recovery Associates, LLC*, No. 19-12259, 2022 WL 17668024, at *5 (D.N.J. Dec. 14, 2022). As such, courts in this district have adopted the holding of *McCarrell* and applied the New Jersey statute of limitations to claims arising from the sale of goods. *See, e.g.*, *Martinez v. Ethicon, Inc.*, No. 18-17570, 2019 WL 4345867, at *2 (D.N.J. Sept. 12, 2019); *Gonzales v. Ethicon Corp., Inc.*, No. 18-17658, 2019 WL 4306352, at *3 (D.N.J. Sept. 11, 2019).

[6] Ms. Stromberg cites the Consumer Financial Protection Bureau's ("CFPB") website containing a repository of credit card agreements as evidence that the only potential agreements at issue contain Virginia choice-of-law provisions. (Reply at 4). However, as Midland points out, Ms. Stromberg's counsel's own certification admits that he only reviewed "a sampling of the credit card agreements from Capital One available from the Consumer Financial Protection Bureau," rather than all potential agreements, and that "the CFPB's repository begins with the Third Quarter of 2011 and, therefore, may not have a copy of all the terms which applied to Ms. Stromberg's account." (D. E. No. 154-2 ¶ 30, 32). Thus, the Court does not view the allegations relating to the CFPB repository as conclusive.

[7] Ms. Stromberg contends that Midland should be estopped from raising the prospect of other contractual choice-of-law provisions because Midland refused to produce class members' credit card account agreements, information, and notes to Ms. Stromberg. (Reply at 9–12). However, as Midland correctly notes, Ms. Stromberg's request was denied because the discovery would have introduced the sort of individualized inquiry that is inappropriate in a class action. (Sur-Reply at 1–2). At the outset, Midland refused the production because it "would be a burdensome, expensive and time consuming process which would, most importantly, require an individualized inquiry." (D.E. No. 84 at 2). In apparent agreement with Midland, the Honorable Steve Mannion, U.S.M.J. stayed Ms. Stromberg's request because she was "seeking broad and individualized discovery." (D.E. No. 86 at 3–4). The Court then upheld this stay, recognizing that it "need[ed] to give at least some discovery to [counsel] that [would] allow him to at least argue for class certification" (D.E. No. 114 at 75:22–24), but finding that counsel's request "[had] to be narrowly tailored" (*id.* at 81:24–25). If the discovery parameters that the parties later reached (*see* D.E. No. 148) were insufficient for Ms. Stromberg to satisfy the predominance requirement, then that deficiency did not result from misconduct on the part of Midland.

10

agreements contain one of two variations selecting Virginia law" because the two Capital One credit card agreements provided on the CFPB website included Virginia choice-of-law provisions (Reply at 4; D.E. No. 154-2, Stern Decl. ¶¶ 33–34), it is not clear that Virginia law thereby applies to every class member. Although Virginia likely had a substantial relationship to the transactions because Capital One is headquartered in the state, *see Corporate Offices*, CAPITAL ONE, https://www.capitalone.com/about/corporate-information/corporate-offices/ (last visited Jan. 16, 2024), New Jersey may have had a materially greater interest in claims against particular class members, for example, New Jersey residents. Moreover, the second agreement on the CFPB website waived the statute of limitations and only selected the Virginia statute in the alternative if it provided a longer limitations period than the state of residence. (*Id.* ¶ 34 ("You waive any applicable statute of limitations as the law allows. Otherwise, the applicable statute of limitations period for all provisions and purposes under this Agreement (including the right to collect debt) will be the longer period provided by Virginia or the jurisdiction where you live.")). Since the Virginia statute provides a shorter limitations period than New Jersey, *compare* Va. Code Ann. § 8.01–246, *with* N.J.S.A. § 2A:14–1, the New Jersey statute of limitations would apply to class members who reside in New Jersey and were subject to this agreement.[8] In other words, even assuming that all of the class members were subject to a Virginia choice-of-law clause—a large assumption—they still could be subject to a New Jersey statute of limitations depending on the nature of their relationship to each state, the circumstances under which they entered the agreements, and the particular language of their credit card agreements.

---

[8]  Ms. Stromberg contends that "it is possible none of [the applicable agreements] have the waiver clause" because a Capital One employee attested in another case that the contractual choice-of-law provision was discontinued. (Reply at 9). However, putting aside the fact that "Plaintiff's introduction of new 'evidence' on reply is inappropriate" (Sur-Reply at 2), arguments on what is "possible" do not counter the fact that individualized determinations are necessary to determine what the agreements *actually* said.

11

And even more concerning, Ms. Stromberg appears to concede that based on the terms of the agreements, Capital One may have had the ability to "change the account terms at will simply upon mailing notice of the changes," but merely contends, with no evidentiary support, that because "[t]he version omitting the waiver appears in the current versions of Capital One's agreements," "[i]t is reasonable to infer Capital One prefers uniformity in its agreements and, therefore, mailed notice of its most current version." (Reply at 5–6). Such a weak, unsupported inference cannot be considered evidence of what the agreement terms actually were for each class member.

Therefore, it is clear that individualized inquiry would be necessary to determine the applicable statute of limitations.[9] *See Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 683-84 (M.D. Fla. 2015) (declining to certify a similar proposed class on predominance grounds because determining whether the Delaware limitations period had run for each class member would require the "extensive factual inquiry that courts have held to be too administratively burdensome to warrant class certification" and collecting cases); *Clavell v. Midland Funding LLC*, No. 10-3593, 2011 U.S. Dist. LEXIS 65721, at *11 (E.D. Pa. June 21, 2011) ("[W]hether the debt was time-barred is something that we would have to determine for each potential class member. 'If the court is required to conduct individual inquiries to determine whether each potential class member falls within the class, the court should deny certification.'" (quoting *Ramirez v. Palisades Collection, LLC*, 250 F.R.D. 366, 369 (N.D. Ill. 2008)); *Parkis v. Arrow Financial Services, LLS*, No. 07-0410, 2008 WL 94798, at *4 (N.D. Ill. Jan. 8, 2008) (finding that in "[i]n order to resolve" the question of whether the relevant statutes of limitations had expired, the court "would have to

---

[9] Ms. Stromberg's counsel attests that class members' Capital One credit card accounts are the same "type" because their account numbers begin with 517805. (Stern Decl. ¶ 41). However, as Midland correctly notes, this attestation is not supported by any personal knowledge, and there is no evidence that the same types of Capital One credit card accounts are subject to the same statutes of limitations. (Opp. at 27).

12

look into the payment history of each putative class member to determine whether the last payment date or charge-off date was more than five years prior to the filing of the debt-collection suit. Because the payment timing and history will be different for each putative class member, his would involve an individualized inquiry for each potential member. Thus, the commonality requirement is not met.").

Individualized inquiry is also necessary to determine the default dates. Since the statute of limitations for breach of contract commences when the cause of action accrues, *see, e.g.*, N.J.S.A. § 2A:14–1, the date of default impacts whether the debt is time-barred. Here, however, there is no class-wide method to calculate default dates, despite inevitable variation among class members. At most, Ms. Stromberg relies upon "the charge-off date" reflected in Midland records because "'regulations require banks issuing credit cards to charge off . . . debts by the end of the month in which they become one hundred and eighty days past due.'" (D.E. No. 154-2, Stern Decl. ¶¶ 38–39 (quoting *New Century Fin. Servs., Inc. v. Oughla*, 437 N.J. Super. 299, 312 (App. Div. 2014))). But the meaning of a charge-off date in a general regulatory requirement is insufficient evidence to establish the precise import of that term in internal business documents or to make a legal determination regarding the default date. Without more, there is no consistent method to evaluate default dates on a class-wide basis.

Finally, individualized inquiry is necessary to determine the possibility of tolling. Both "claims and defenses" are relevant to predominance, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 314 (3d Cir. 1998) (citations omitted), and tolling would effectively function as a defense to the claim that the debts were time-barred. For example, New Jersey recognizes the doctrine of equitable tolling, which suspends the statute of limitations where the relevant period expires as a result of an "adversary's misconduct." *Bustamante v. Borough of*

13

*Paramus*, 994 A.2d 573, 588 (N.J. Super. Ct. App. Div. 2010) (citations omitted). Similarly, statutory tolling may be available in New Jersey if an adversary is a non-resident when the cause of action accrues, *see, e.g.*, N.J.S.A. § 2A:14–22, and an extension of time to file a lawsuit following a stay of bankruptcy proceedings may be available as well, *see Nativo v. Grand Union Co.*, 717 A.2d 429, 431 (N.J. Super. Ct. App. Div. 1998) (interpreting 11 U.S.C. § 108(c)). Because the circumstances that give rise to tolling and extensions are fact-specific, variation among class members is possible. Here, however, there is no class-wide method to evaluate the possibility of tolling.[10]

### ii. Standing

The statute of limitations aside, individual issues also predominate with respect to standing. The first element of standing—injury in fact—is the "'foremost' of standing's three elements." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020) (citing *Spokeo*, 578 U.S. at 338). To allege an injury in fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 272 (3d. Cir. 2016) (cleaned up). A harm is particularized if it affects the plaintiff "in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 340.

---

[10] The possibility of tolling may be speculative, but Ms. Stromberg bears the burden to prove predominance by a preponderance of the evidence, not Midland. Courts may be "unwilling to allow such 'speculation and surmise to tip the decisional scales in a class certification ruling,'" *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)), as "a defendant should not be able to point to evidence that possibly could be admitted for the purpose of defeating certification where a plaintiff proposes a reasonable theory of a claim that overwhelmingly presents common questions," *Demmick v. Cellco P'ship*, No. 06-2163, 2010 WL 3636216, at *12 (D.N.J. Sept. 8, 2010). However, the decisional scales are already weighted against predominance and individual questions are already overwhelmingly present.

"Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. A plaintiff may not allege a "bare" statutory violation, "divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 141 S. Ct. at 2205 (emphasis in original). "If a statutory harm is concrete, no 'additional harm beyond the one Congress has identified' is required." *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625, 626–27 (3d Cir. 2021) (quoting *Spokeo*, 578 U.S. at 342); *see also, e.g.*, *Browne v. Nat'l Collegiate Student Loan Tr.*, No. 21-1871, 2021 WL 6062306, at *3 (D.N.J. Dec. 22, 2021) (dismissing complaint for lack of standing where plaintiff alleged only non-licensure because such bare procedural violation does not establish concrete harm).

"'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Spokeo*, 578 U.S. at 340. "Although tangible injuries are perhaps easier to recognize," the Supreme Court has stated that "intangible injuries can nevertheless be concrete," such as, for example, harm resulting from violations of the right to free speech or free exercise. *Id.*; *see also id.* at 342 (noting that the risk of reputational harm associated with libel and slander may be concrete); *Morales*, 859 F. App'x at 626 ("Intangible harms like privacy abuses can be concrete."). Under governing Supreme Court precedent, "courts must engage in a two-part inquiry when assessing statutory injuries: 'first, whether the alleged injury bears a close relationship to a traditionally recognized harm, and second, whether a plaintiff has pled more than a mere injury-in-law.'" *Ortner v. Equifax Info. Servs., Inc.*, No. 21-2219, 2022 WL 3566623, at *3 (D.N.J. Aug. 18, 2022) (quoting *Rohl v. Pro. Fin. Co.*, No. 21-17507, 2022 WL 1748244, at *3 (D.N.J. May 31, 2022)). A substantive "informational injury" can also be considered a concrete intangible harm. *See Deutsch v. D&A Servs. LLC*, No. 22-1042,

15

2023 WL 2987568, at *3 (3d Cir. Apr. 18, 2023).  Specifically, "an informational injury, where a plaintiff alleges that she failed to receive information to which she is legally entitled, is sufficiently concrete to confer standing" where the plaintiff alleges "(1) the omission of information to which she claims entitlement, (2) adverse effects that flow from the omission, and (3) the requisite nexus to the concrete interest Congress intended to protect when it created a legal entitlement to the information at issue." *Id.*

"No doubt, predominance concerns can arise when unnamed class members must submit individualized evidence to satisfy standing." *Huber*, 84 F.4th at 156; *see also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 368 (3d Cir. 2015) (noting that "a properly formulated Rule 23 class should not raise standing issues).  The Third Circuit has held that a named representative "should submit evidence enabling the District Court to estimate how many class members (or what proportion of them) have standing," and that the district court "should evaluate the feasibility of receiving individualized evidence on class members' standing." *Huber*, 84 F.4th at 157 (citations omitted).

Here, it is not clear from the proposed class that all members have standing, as the class definition says nothing about adverse effects stemming from the collection letters in question.  And Ms. Stromberg has not submitted any evidence to establish that standing can be evaluated on a class-wide basis—such as whether class members relied upon the allegedly incorrect letters or suffered adverse downstream effects from the letters—so the Court cannot determine "if many class members appear likely to satisfy standing or if there is a plausible straightforward method to

16

sort them out at the back end of the case." *Id.* at 157–58 (citations omitted).[11]  Therefore, individualized inquiry is necessary to determine standing.

Accordingly, the predominance requirement is not satisfied.  Because the class cannot be certified absent predominance, the Court need not consider the remaining requirements.

## V.     CONCLUSION

For the reasons stated above, the motion for class certification is **DENIED.**  An appropriate Order accompanies this Opinion.

Dated: April 18, 2024                                           *s/ Esther Salas*
                                                                **Esther Salas, U.S.D.J.**

---

[11]     For her part, Ms. Stromberg points to the Third Circuit decision in *Deutsch v. D&A Services* for supplemental authority regarding standing.  (D.E. No. 170).  However, as Midland correctly notes, that Third Circuit decision is nonbinding, and the facts therein are distinguishable.  (*See* D.E. No. 171 at 2–3).  In that case, an injury could be traced to "the omission of information" regarding rights afforded by the FDCPA—specifically, 15 U.S.C. § 1692(g)(a)—as well as "adverse effects that flow[ed] from the omission"—specifically, a frustration in the ability to respond and a deprivation of the right to the benefits provided by the FDCPA.  *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *3 (3d Cir. Apr. 18, 2023) (citations omitted).  Indeed, *Deutsch* "emphasized that for an asserted informational injury to confer standing, the omission *must* lead to 'adverse effects' or 'downstream consequences.'" *Pazymino v. Portfolio Recovery Assocs., LLC*, No. 19-2259, 2023 WL 7126446, at *4 (D.N.J. Oct. 30, 2023) (emphasis added).